IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| BLUE STATE REFUGEES, et al., | ) Case No. 3:21-cv-03024-RAL |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KRISTI NOEM, Governor of South | ) |
| Dakota, in her official capacity, et al., | ) |
| | ) |
| Defendants. | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Introduction ....................................................................................... 1

Statement of Facts ............................................................................. 2

*South Dakota's Capitol Grounds* ................................................ 2

*The Regulatory Regime* ............................................................... 2

*Defendants' Censorship of Plaintiffs' Political Speech* ............ 4

Summary of Argument ....................................................................... 9

Argument ........................................................................................... 10

I.   Plaintiffs will succeed on the merits, as Defendants' Seasonal
     speech prohibition is not narrowly tailored to serving a significant
     government interest, and leaves no alternative channels of
     communication .................................................................... 12

II.  The Seasonal Speech Ban irreparably injures Plaintiffs ............ 19

III. The balance of the equities, and the public interest, favors
     Plaintiffs ............................................................................. 19

IV.  The Court should not require Plaintiffs to post a bond .............. 19

Conclusion .......................................................................................... 20

Table of Authorities

## Cases

*Am. Civ. Liberties Union v. Wilkinson,*
    895 F.2d 1098 (6th Cir. 1990) ............................................................... 13

*Borough of Duryea v. Guarnieri,*
    564 U.S. 379 (2011) ............................................................................... 14

*Bowman v. White,*
    444 F.3d 967 (8th Cir. 2006) ............................................................... 12

*Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist.*
    *No. 1*, 690 F.3d 996 (8th Cir. 2012) .................................................... 11

*Clark v. Cmty. for Creative Non-Violence,*
    468 U.S. 288 (1984) ............................................................................... 14

*Cox v. Louisiana,*
    379 U.S. 536 (1965) ............................................................................... 14

*Edwards v. South Carolina,*
    372 U.S. 229 (1963) ....................................................................... 14, 18

*Galvin v. Hay,*
    374 F.3d 739 (9th Cir. 2004) ............................................................... 18

*Havlak v. Vill. of Twin Oaks (In re Josephine Havlak Photographer,*
    *Inc.),* 864 F.3d 905 (8th Cir. 2017) ...................................................... 18

*Hoffmann v. Liberty,*
    905 F.2d 229 (8th Cir. 1990) ............................................................... 14

*Jacobsen v. Harris,*
    869 F.2d 1172 (8th Cir. 1989) ............................................................. 15

*Johnson v. Minneapolis Park & Rec. Bd.*,
    729 F.3d 1094 (8th Cir. 2013) ....................................................... 14, 15

*Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*,
    163 F. Supp. 3d 592 (E.D. Mo. 2016) .................................................... 18

*Lederman v. United States*,
    291 F.3d 36 (D.C. Cir. 2002).............................................................. 13

*Libertarian Party of Ark. v. Thurston*,
    962 F.3d 390 (8th Cir. 2020)............................................................. 11

*Lubavitch of Iowa, Inc. v. Walters*,
    684 F. Supp. 610 (S.D. Ia. 1988). ....................................................... 15

*Mich. Up & Out of Poverty Now Coal. v. State*,
    210 Mich. App. 162, 533 N.W.2d 339 (1995)....................................... 14

*Perfetti Van Melle USA, Inc. v. Midwest Processing, LLC*,
    135 F. Supp. 3d 1015 (D.S.D. 2015) ..................................................... 19

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) ........................................................................... 12

*Pinette v. Capitol Square Review & Advisory Bd.*,
    30 F.3d 675 (6th Cir. 1994) ............................................................... 13

*Pleasant Grove City v. Summum*,
    555 U.S. 460 (2009) ......................................................................... 14

*Powell v. Noble*,
    798 F.3d 690 (8th Cir. 2015) ............................................................. 19

*Richland/Wilkin Joint Powers Auth. v. United States Army Corps of
    Eng'rs*, 826 F.3d 1030 (8th Cir. 2016)............................................. 11, 20

*Rodgers v. Bryant*,
    942 F.3d 451 (8th Cir. 2019) ............................................................. 19

*Schneider v. State,*
    308 U.S. 147 (1939) ...............................................................18

*Smith v. Lindstrom,*
    699 F. Supp. 549 (W.D. Va. 1988) ........................................13

*Turtle Island Foods, SPC v. Thompson,*
    992 F.3d 694 (8th Cir. 2021) ...............................................11

*Watters v. Otter,*
    955 F. Supp. 2d 1178 (D. Idaho 2013)..................................13

## Statutes and Rules

Fed. R. Civ. P. 65(c) ..................................................................19

S.D. Admin. Code § 10:08:01:02..................................................2

S.D. Codified Laws § 22-6-7 ........................................................4

S.D. Codified Laws § 23-1A-22 ....................................................4

S.D. Codified Laws § 5-15-34 ...................................................2, 4

S.D. Codified Laws § 5-15-35 .......................................................4

## Other Authorities

Austin Goss, *SD Legislators urge 'vaccine mandate ban,' face Noem
    opposition* (Aug. 19, 2021), Dakota News Now, available at
    https://www.dakotanewsnow.com/2021/08/20/sd-legislators-urge-
    private-vaccine-mandate-ban-face-noem-opposition/ ...........5

Proclamation Convening the Legislature in Special Session on
    November 8,
    2021, https://mylrc.sdlegislature.gov/api/Documents/220289.pdf (last
    visited Nov. 3, 2021)................................................................5

Proclamation Convening the Legislature in Special Session on
    November 9,
    2021, https://mylrc.sdlegislature.gov/api/Documents/ 221728.pdf (last
    visited Nov. 3, 2021). .............................................................................6

South Dakota Bureau of Administration, "Application for Use of the
    Capitol and Grounds," available at
    https://boa.sd.gov/forms/PublicFacilitiesApp.aspx (last visited Nov. 2,
    2021) ......................................................................................................4

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

INTRODUCTION

Immediate injunctive relief is required to protect South Dakotans' fundamental rights to free speech, petition, and peaceable assembly at the place and time where such rights matter most—the seat of government on days when the legislature is in session.

On November 8 and 9, 2021, Plaintiffs plan to hold a political demonstration on the South Dakota Capitol Grounds to coincide with the special legislative sessions set for those dates. Plaintiffs will also exercise their fundamental First Amendment rights at other times throughout the year for the foreseeable future. But State officials have sprung a seasonal speech prohibition to banish all demonstrations from the State capitol grounds from October 25 through January 1. The asserted reason? They are decorating the capitol building for Christmas.

The State faces a heavy burden in justifying speech restrictions in its pre-eminent traditional public forum. Its decoration of the capitol building cannot remotely justify a seasonal speech prohibition. This Court should issue a temporary restraining order and a preliminary injunction to restore fundamental First Amendment freedoms.

1

STATEMENT OF FACTS

*South Dakota's Capitol Grounds*

South Dakota's Capitol "houses the state Legislature, Supreme Court, most of the Constitutional Officers, and various bureaus of executive management." South Dakota Bureau of Administration, Buildings and Grounds, *State Capitol and Capitol Grounds Use Guidelines* ("Guidelines"), https://boa.sd.gov/central-services/docs/public_facilities_brochure.pdf (last visited Nov. 2, 2021). "The Capitol campus grounds are comprised of more than 200 acres of state property that includes 23 buildings; Capitol Lake; more than 80 acres of cultured grass, including Hilger's Gulch; and numerous memorials." *Id.*

*The Regulatory Regime*

The Commissioner of Administration may promulgate rules and regulations governing use of the capitol and its grounds. S.D. Codified Laws § 5-15-34. One of those rules provides, "No person may hold any event, function, or demonstration on the capitol complex unless a facility use request has been submitted to and approved by the Bureau of Administration prior to the use or function to be held." S.D. Admin. Code § 10:08:01:02; Guidelines § A.1.

"Activities and events include any: formal or informal gathering or congregation of people for any purpose; display or exhibit; or performance, demonstration or ceremony." Guidelines § A.2.

"Capitol grounds are available for activities and events from 7:00 a.m. to 9:00 p.m. (CT) daily. Areas on the Capitol grounds commonly requested for activities and events include: the front steps of the Capitol; areas around Capitol Lake; and Hilger's Gulch." *Id.* § B.4. But "[d]uring the annual Christmas tree display (Thanksgiving week through New Years) the public areas in the Capitol building are reserved solely for activities and events related to the display, and special scheduling and space considerations apply." *Id.* § B.5. The State invites people to "contact the Bureau of Administration . . . for more information about scheduling a Christmas tree display-related activity or event." *Id.*

The "Facility Use Request" that people must use when seeking a permit to use the State capitol grounds provides that applicants first contact the Buildings and Grounds office "to confirm availability of the date requested before completing this application form." South Dakota Bureau of Administration, "Application for Use of the Capitol and

Grounds," available at https://boa.sd.gov/forms/PublicFacilitiesApp.aspx
(last visited Nov. 2, 2021).

"Any person who violates a rule promulgated pursuant to § 5-15-34
commits a petty offense." S.D. Codified Laws § 5-15-35. Petty offenses
are civil proceedings in which the State acts as plaintiff. S.D. Codified
Laws § 22-6-7. The State is awarded $25 for prevailing in a petty
offense proceeding, though that amount may be reduced or eliminated
in the interests of justice. S.D. Codified Laws § 23-1A-22.

*Defendants' Censorship of Plaintiffs' Political Speech*

Plaintiffs regularly hold political demonstrations and rallies
throughout the year, including during the Christmas holiday season.
Robertson Decl., ¶ 2; Dollick Decl., ¶ 3. Most of these demonstrations
have taken place in and around Spearfish, South Dakota, but Plaintiffs
are ready to spread their message to other parts of the state, including
to the State capitol grounds. Robertson Decl., ¶ 3; Dollick Decl., ¶ 3.

Among their beliefs, Plaintiffs and their members deeply believe that
receipt of COVID-19 vaccines should not be required to maintain
employment, attend schools, or access public accommodations and other
businesses. Some of them object to these drugs on religious grounds.

4

Others believe the risk/reward profile of these drugs cuts against their use, at least on their own facts. They believe that it is morally wrong, and socially and economically harmful, to require people who do not wish to take these drugs to take them as a condition of employment, education, or visiting a business. Robertson Decl., ¶ 4; Dollick Decl., ¶ 4.

South Dakota legislators have drafted legislation, Draft 55, the "COVID-19 Vaccine Freedom of Conscience Act," which would bar employers, educational institutions, and businesses from requiring that people be vaccinated against COVID-19. Robertson Decl., ¶ 5; Dollick Decl., ¶ 5; Austin Goss, *SD Legislators urge 'vaccine mandate ban,' face Noem opposition* (Aug. 19, 2021), Dakota News Now, available at https://www.dakotanewsnow.com/2021/08/20/sd-legislators-urge-private-vaccine-mandate-ban-face-noem-opposition/.

South Dakota's part-time legislature is set to meet in special session on November 8, 2021, to consider redistricting. See Proclamation Convening the Legislature in Special Session on November 8, 2021, https://mylrc.sdlegislature.gov/api/Documents/220289.pdf (last visited Nov. 3, 2021). It is also set to meet in special session on November 9, 2021, to consider the impeachment of the State's Attorney General. *See*

Proclamation Convening the Legislature in Special Session on November 9, 2021, https://mylrc.sdlegislature.gov/api/Documents/221728.pdf (last visited Nov. 3, 2021).

Plaintiffs intend to hold a political demonstration in support of Draft 55, on the South Dakota Capitol Grounds, on November 8 and 9, 2021, to coincide with the special legislative sessions on those days. It is important to Plaintiffs that they be able to demonstrate on the grounds of the actual seat of state government, especially when the legislature is in session. Speaking and protesting at other times and locations would not hold the same meaning or be as effective. Robertson Decl., ¶ 6; Dollick Decl., ¶ 6. The demonstration would involve speeches by Robertson, Dollick, and others; chanting; waiving of signs and flags; and distributing political literature. *Id.*

Plaintiffs have attracted approximately 30-40 people to their demonstrations in the past. They estimate at least as many people would attend their planned November 8-9 demonstration at the capitol grounds. Robertson Decl., ¶ 7; Dollick Decl., ¶ 7. Plaintiffs also intend to regularly hold political demonstrations on the South Dakota Capitol Grounds during the winter holiday season, as they believe that their

messages of freedom, community, and renewal resonate with the holiday spirit. *Id.*

On October 29, 2021, Luke Robertson emailed Joan Henderson, Senior Secretary at the Bureau of Administration, seeking a demonstration permit. "My friends and I consider ourselves Blue State Refugees, and we would like to obtain a permit for using the capitol grounds on Nov 8 and 9 for a political demonstration during the Special Session. How can we obtain this permit?" Robertson Decl., ¶ 8; Exh. A. Henderson responded via email, "Unfortunately, the Capitol Grounds are not available during the Special Session due to the Christmas decorating season." *Id.*

Robertson, in turn, responded via email by linking to the Guidelines, and stating, "The State Capitol and Capitol Grounds Use Guidelines say on section B5 that the annual Christmas tree display is for Thanksgiving week through New Years. My request is for Nov 8-9, which does not fall in that range. Can you please clarify?" Robertson Decl., ¶ 9; Exh. A. On November 1, 2021, Henderson replied, explaining,

> South Dakota Capitol in Pierre has a huge Christmas Tree display
> during that time. And in order to prepare for the display, we start
> decorating in October. The week of November 8, we have scaffolding

in the Capitol Rotunda and we are decorating. In front of the Capitol, we will be preparing for bringing in over 100 trees.

Robinson Decl., ¶ 10; Exh. A.

On November 1, 2021, Blue State Refugees member Sara Lynn Bouzek called the state Bureau of Administration to inquire about getting a permit to demonstrate at the capitol grounds. She spoke with Henderson, who told her that demonstrations are not allowed between November 1 and January 1 anywhere on State capitol grounds property because they are decorating the Capitol for Christmas. Bouzek Decl., ¶ 4. Henderson stated that decorating activity ends on November 22 this year, to be followed by the official lighting ceremony on November 23. She invited Bouzek's party to visit the Capitol to view the decorations, and offered to have Defendant Leah Svendsen call her back with further information. *Id.* ¶ 5.

Shortly afterward, Bouzek received a call from Svendsen. Svendsen confirmed that no demonstrations are allowed during the months of November and December anywhere on the state capitol grounds, because the State considers its decorating activities to be an "event" and allows only one "event" per day anywhere, inside or outside, on the capitol grounds, per Guidelines § A.4 ("Only one activity or event per

day will be approved on a first come, first served basis."). *Id.* ¶ 6. Svendsen stated that a demonstration at any time in November or December would interfere with the decorators' work. *Id.*

Plaintiffs will refrain from engaging in their planned November 8 and 9 demonstration and future holiday season demonstrations at the capitol grounds, because they fear that their demonstrations would be disrupted and that they might face arrest, petty offense charges, fines, prosecution, and imprisonment for demonstrating without a permit. Robertson Decl., ¶ 12; Dollick Decl., ¶ 8; Bouzek Decl., ¶ 7.

## SUMMARY OF ARGUMENT

Although Plaintiffs need only show a fair chance of prevailing on the merits, they are actually likely to prevail. The State bears the burden of showing that its time, place, and manner restrictions are narrowly tailored to advancing a significant government interest, and that they leave ample alternative means of communication. The wholesale prohibition of First Amendment activity, throughout the capitol grounds and for an uninterrupted period exceeding two months, could not be justified even if the State claimed that such a draconian prohibition advanced a significant government interest.

The State's asserted interest here—the decoration of the Capitol for Christmas—does not sound in protecting the public's health and safety. Nor does it even make sense as a reason for prohibiting protest. Nor is the seasonal speech prohibition compatible with the State's written guidelines, which specifically allow First Amendment activity *inside* the capitol building during the Christmas season.

Plaintiffs' irreparable harm is plain—they are being forbidden from engaging in core First Amendment activities. The equities balance in their favor, especially considering the lack of harm to the Defendants in having the speech prohibition enjoined. And the public interest always favors protecting rights and enforcing the Constitution. Considering that the State suffers no harm when people use the capitol grounds for their intended, traditional purpose, the motion should be granted, and without a bond.

## ARGUMENT

"A district court considering injunctive relief evaluates the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest." *Turtle Island Foods, SPC v.*

*Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (internal quotation marks omitted). Because Plaintiffs are not challenging any product of the democratic process, such as a duly enacted statute, they need only establish a "fair chance of prevailing" with respect to the first prong. *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (citation omitted).

However, "[w]hen a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Libertarian Party of Ark. v. Thurston*, 962 F.3d 390, 405 (8th Cir. 2020) (internal quotation marks omitted). A "likely First Amendment violation further means that the public interest and the balance of harms (including irreparable harm to [plaintiff ]) favor granting the injunction." *Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1004 (8th Cir. 2012) (citation omitted). Moreover, considering that following constitutional requirements cannot injure Defendants, the Court should not require a bond to secure the injunction.

I.    PLAINTIFFS WILL SUCCEED ON THE MERITS, AS DEFENDANTS'
      SEASONAL SPEECH PROHIBITION IS NOT NARROWLY TAILORED TO
      SERVING A SIGNIFICANT GOVERNMENT INTEREST, AND LEAVES NO
      ALTERNATIVE CHANNELS OF COMMUNICATION.

"[T]he Supreme Court uses a forum analysis for evaluating restrictions of speech on government property," which "initially requires a court to determine whether a property is a traditional public forum, a designated public forum, or a nonpublic forum." *Bowman v. White*, 444 F.3d 967, 974 (8th Cir. 2006) (citations omitted). "[T]he extent to which access to, and the character of speech upon, government property may be limited depends upon the nature of the forum in which the speech takes place." *Id.* at 974-75 (citation omitted).

The South Dakota capitol grounds are a quintessential traditional public forum, falling within the category that includes "parks which 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).

Chief among such parks are the parks surrounding seats of government, from Capitol Hill in Washington, D.C., to state capitol

grounds such as South Dakota's, to lawns adjacent to county

courthouses and municipal buildings. *Lederman v. United States*, 291

F.3d 36, 41 (D.C. Cir. 2002) ("[C]ourts have long recognized that the

Capitol Grounds as a whole meet the definition of a traditional public

forum: They have traditionally been open to the public, and their

intended use is consistent with public expression."); *Pinette v. Capitol*

*Square Review & Advisory Bd.*, 30 F.3d 675, 678 (6th Cir. 1994)

("[Ohio's] Capitol Square is, indeed, a traditional public forum"), *aff'd*,

515 U.S. 753 (1995); *Am. Civ. Liberties Union v. Wilkinson*, 895 F.2d

1098, 1101 (6th Cir. 1990) (Kentucky Capitol Grounds "a recognized

public forum"); *Watters v. Otter*, 955 F. Supp. 2d 1178, 1186 (D. Idaho

2013) (courthouse grounds across from Idaho's State Capitol: "this

public open space is highly visible and physically close to the seat of

State Government, making it a natural forum for political protests");

*Smith v. Lindstrom*, 699 F. Supp. 549, 563 (W.D. Va. 1988) (front lawn

of county office building: "The site's function -- the lawn in front of a

seat of government -- is similar to other settings judged to be traditional

public fora.") (citations omitted), *aff'd*, 895 F.2d 953 (4th Cir. 1990);

*Mich. Up & Out of Poverty Now Coal. v. State*, 210 Mich. App. 162, 172,

533 N.W.2d 339, 345 (1995) ("The Capitol grounds constitute a traditional public forum, where the right to free speech is closely guarded.").

Indeed, advocating for political change "at the site of the State Government" is the "most pristine and classic form" of exercising the First Amendment freedoms of speech, assembly, and petition. *Edwards v. South Carolina*, 372 U.S. 229, 235-36 (1963).

"To justify a content-neutral restriction on the time, place, and manner of protected speech in a public forum," Defendants "must show that the restriction is 'narrowly tailored to serve a significant governmental interest, and . . . leave[s] open ample alternative channels for communication of the information.'" *Johnson v. Minneapolis Park & Rec. Bd.*, 729 F.3d 1094, 1099 (8th Cir. 2013) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). The same narrow tailoring analysis governs Plaintiffs' claims under the rights of assembly, *see, e.g., Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009); *Cox v. Louisiana*, 379 U.S. 536, 554-55 (1965), and petition, *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388-89 (2011); *Hoffmann v. Liberty*, 905 F.2d 229, 233 (8th Cir. 1990).

> Th[e] narrow tailoring requirement means not only that the regulation must promote a substantial government interest that would be achieved less effectively absent the regulation, but also that the factual situation demonstrates a real need for the government to act to protect its interests. In other words, it is not enough for [Defendants] to recite an interest that is significant in the abstract; there must be a genuine nexus between the regulation and the interest [they] seek[] to serve.

*Johnson*, 729 F.3d at 1099 (internal quotation marks, citations, and punctuation omitted).

Defendants cannot carry their burden. To be sure, "the state has a significant and legitimate interest in controlling the grounds at its own seat of government," including "legitimate" "aesthetic interests." *Lubavitch of Iowa, Inc. v. Walters*, 684 F. Supp. 610, 614 (S.D. Ia. 1988). And courts recognize that the "state may legitimately exercise its police powers to advance aesthetic values," *Jacobsen v. Harris*, 869 F.2d 1172, 1174 (8th Cir. 1989) (citation omitted), particularly as zoning to protect historic districts or reduce urban blight can significantly impact property values. But in this context, though Plaintiffs support the Christmas display, the State's interest in decorating its Capitol is not equivalent to "substantial" interests such as those in maintaining public safety.

More importantly, even if the Court were to assume that the State's decorating interest is substantial, the seasonal speech ban is not remotely tailored to the decorating interest, let alone narrowly so. There is no "real need" for such a broad ban, and there is no "genuine nexus" between the decorating interest and the seasonal speech ban.

The capitol grounds extend to over 200 acres, or roughly 150 football fields. Banning *all* First Amendment activity in an area this size—continuously for at least[1] two months—is not in any way tailored to advancing any interest in allowing State workers to decorate the Capitol or any of its surroundings. Defendants can keep people away from the Capitol's front doors while trees are coming through. They can keep people out of the rotunda while the trees are moved through the area and decorated with ornaments. What this has to do with people protesting half a mile away is unclear. Plaintiffs should be allowed to demonstrate as near to the capitol as possible without interfering with any decorating activity, should that be occurring at the same time.

Plaintiffs do not question that public parks can be closed for maintenance. Groundskeepers everywhere will, on occasion, cordon off

---

[1] Ms. Henderson noted that the decoration starts in October.

some discrete area of a park, while workers trim trees, mow grass, and install or maintain amenities—for as long as they need to work and not any longer. But Defendants are not pervasively decorating throughout the entire capitol grounds, 24 hours a day, seven days a week, for a solid two months or more, and in any manner that is inherently incompatible with speech and protest. Nor are they closing the entire capitol grounds to visitors, for any apparent length of time. Indeed, Henderson welcomed Plaintiffs to visit the Christmas display as early as November 23, by which time the decorating activity would have concluded not even half-way through the speech ban's duration.

The need for such a broad prohibition is also undermined by the State's written guidelines. Even inside the capitol rotunda—the heart of the Christmas tree display—"activities and events" are supposedly allowed between Thanksgiving week and Christmas, so long as they are Christmas tree related. Guidelines, § B.5. Yet for some reason, no events whatsoever are allowed anywhere throughout hundreds of acres outside, for weeks before and after this time.

Because the seasonal speech prohibition is not narrowly tailored to any significant government interest, the state cannot carry its burden,

and the practice is unconstitutional; there is no need to examine whether the seasonal speech ban leaves open ample alternative means of communication. But Plaintiffs note that it does not. Defendants have left no doubt that they are prohibiting demonstrations throughout the entirety of the State's property. And it is well-established that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. State*, 308 U.S. 147, 163 (1939); *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 163 F. Supp. 3d 592, 601 (E.D. Mo. 2016) ("to say that [plaintiffs] can use other parks in other municipalities misses the mark").

Moreover, an alternative location may be insufficient "where that expression depends in whole or part on the chosen location." *Havlak v. Vill. of Twin Oaks (In re Josephine Havlak Photographer, Inc.),* 864 F.3d 905, 918 (8th Cir. 2017) (quoting *Galvin v. Hay*, 374 F.3d 739, 756 (9th Cir. 2004)). The capitol grounds are *sui generis*, *Edwards*, 372 U.S. at 235-36, and Plaintiffs' speech derives its meaning and impact, in part, from its location at the seat of government. Robinson Decl., ¶ 6; Dollick Decl., ¶ 6.

II.    THE SEASONAL SPEECH BAN IRREPARABLY INJURES PLAINTIFFS.

"It is well-established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

III.   THE BALANCE OF THE EQUITIES, AND THE PUBLIC INTEREST, FAVOR PLAINTIFFS.

"The remote chance" that Defendants might later prevail "cannot be held sufficient to overcome the public's interest in protecting freedom of expression under the First Amendment [as] it is always in the public interest to protect constitutional rights[,] and [t]he balance of equities . . . generally favors the constitutionally-protected freedom of expression." *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019) (internal quotation marks omitted).

IV.    THE COURT SHOULD NOT REQUIRE PLAINTIFFS TO POST A BOND.

Although Fed. R. Civ. P. 65(c) requires the Court to set a bond as a condition of issuing a preliminary injunction, "[t]he amount of the bond rests within the sound discretion of the trial court." *Perfetti Van Melle USA, Inc. v. Midwest Processing, LLC*, 135 F. Supp. 3d 1015, 1021 (D.S.D. 2015) (internal quotation marks omitted). Courts have used this

discretion to set the amount at zero, dispensing with the bond entirely "where the damages resulting from a wrongful issuance of an injunction have not been shown." *Richland*, 826 F.3d at 1043 (citations omitted). "[I]t [i]s permissible for the district court to waive the bond requirement based on its evaluation of public interest in [a] specific case." *Id.*

Plaintiffs would not ordinarily be required to post a bond as a condition of exercising their fundamental First Amendment rights. Nor would the State be damaged merely by being required to treat its traditional public forum like a traditional public forum, and dispense with its unconstitutional seasonal speech prohibition. Accordingly, the Court should not require the posting of a bond.

## CONCLUSION

The Court should grant a temporary restraining order and a preliminary injunction.

Dated:   November 3, 2021       Respectfully submitted,

/s/ Stacy R. Hegge

Alan Gura*                      Stacy R. Hegge

INSTITUTE FOR FREE SPEECH     Richard Williams

1150 Connecticut Ave., N.W.      Catherine Seeley

Suite 801                     GUNDERSON, PALMER, NELSON &

Washington, DC 20036           ASHMORE, LLP

202.967.0007                 111 W. Capitol Ave., Suite 230

agura@ifs.org               Pierre, SD 57501

605.494.0105

shegge@gpna.com

rwilliams@gpna.com

cseeley@gpna.com

Counsel for Plaintiffs

  *Pro hac vice application forthcoming

21