UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| BLUE STATE REFUGEES, LUKE ROBERTSON, CHAD DOLLICK,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, GOVERNOR OF SOUTH DAKOTA, IN HER OFFICIAL CAPACITY; SCOTT BOLLINGER, COMMISSIONER, BUREAU OF ADMINISTATION, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; BRENT GILL, MANAGER, BUILDINGS AND GROUNDS, BUREAU OF ADMNISTRATION, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND LEAH SVENDSEN, SPECIAL PROJECTS COORDINATOR, BUREAU OF ADMINISTRATION, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES;<br><br>Defendants. | 3:21-CV-03024-RAL<br><br><br>OPINION AND ORDER CANCELLING HEARING AND DENYING INJUNCTION REQUEST AS MOOT |

## I.     Facts

Blue State Refugees, a political organization; Luke Robertson; and Chad Dollick, collectively "the Plaintiffs," emailed the South Dakota Bureau of Administration requesting a permit to demonstrate on the South Dakota State Capitol grounds on November 8, 2021, and November 9, 2021, during a special session of the South Dakota Legislature. Doc. 1 at 2, 9. The State Capitol grounds consist of over 200 acres of land and twenty-three buildings. Doc. 1 at 5.

The demonstration is intended to rally support for legislation that would bar employers, educational institutions, and businesses from requiring vaccination from the Coronavirus

1

("COVID-19"). Doc. 1 at 8–9. The Plaintiffs intended to make speeches, wave signs and flags, and distribute political literature in support of the proposed legislation. Doc. 1 at 9. They estimate that approximately thirty to forty people may attend based on membership in Blue State Refugees and attendance at the organization's prior demonstrations. Doc. 1 at 9.

The Plaintiffs allege that when they sought a permit for their demonstration, officers of the South Dakota Bureau of Administration informed them via email and over the phone that no demonstrations or gatherings are permitted anywhere on State Capitol grounds from November to December. Doc. 1 at 2, 10; Doc. 4 at 7–8. For these two months, the State is decorating the Capitol for Christmas and holding its annual Christmas tree display. Doc. 1 at 2, 10; Doc. 4 at 7–8. In particular, on the week of November 8, there will be scaffolding in the Capitol building and preparations will begin to bring 100 trees into the Capitol building. Doc. 4 at 7–8.

Special Projects Coordinator for the Bureau of Administration Leah Svendsen called the Plaintiffs to inform them that the decoration and display period is considered an "event" under administrative guidelines, and only one event per day can be held on Capitol grounds under those guidelines. Doc. 1 at 11. Coordinator Svendsen further informed them that their proposed demonstration would interfere with the Capitol decorators' work. Doc. 1 at 11. Decorations at the Capitol are expected to be completed by November 22, 2021, prior to the official lighting ceremony on November 23, 2021. Doc. 4 at 8.

On November 3, 2021, the Plaintiffs filed this complaint naming Governor Kristi Noem and several officials for the South Dakota Bureau of Administration as the Defendants. Doc. 1. The complaint asserted that the Defendants violated the Plaintiffs' First Amendment rights to free speech, freedom to petition, and assembly. Doc. 1 at 12–20. The Plaintiffs seek a temporary restraining order enjoining the Defendants from denying their petition for a demonstration permit

or enjoining the Defendants from disrupting the Plaintiffs' demonstration for lack of a permit.

Doc. 1 at 21–22. On November 4, 2021, this Court issued an order notifying the Defendants of

the motion and scheduling a motion hearing for November 5, 2021. Doc. 9. Early on the morning

of November 5, the parties notified the Court that they had reached a stipulation agreement, which

advised that the motion hearing may no longer be necessary because the State had agreed to grant

a permit allowing the demonstration within a designated area of State Capitol grounds.

## II.   Legal Standard

Rule 65 of the Federal Rules of Civil Procedure provides as follows:

**(b) Temporary Restraining Order.**
**(1) *Issuing Without Notice.*** The court may issue a temporary restraining order without
written or oral notice to the adverse party or its attorney only if:
> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate
> and irreparable injury, loss, or damage will result to the movant before the adverse
> party can be heard in opposition; and
> **(B)** the movant's attorney certifies in writing any efforts made to give notice and
> the reasons why it should not be required.

**(2) *Contents; Expiration.*** Every temporary restraining order issued without notice must
state the date and hour it was issued; describe the injury and state why it is irreparable;
state why the order was issued without notice; and be promptly filed in the clerk's office
and entered in the record. The order expires at the time after entry--not to exceed 14 days-
-that the court sets, unless before that time the court, for good cause, extends it for a like
period or the adverse party consents to a longer extension. The reasons for an extension
must be entered in the record.

**(3) *Expediting the Preliminary-Injunction Hearing.*** If the order is issued without notice,
the motion for a preliminary injunction must be set for hearing at the earliest possible time,
taking precedence over all other matters except hearings on older matters of the same
character. At the hearing, the party who obtained the order must proceed with the motion;
if the party does not, the court must dissolve the order.

**(4) *Motion to Dissolve.*** On 2 days' notice to the party who obtained the order without
notice--or on shorter notice set by the court--the adverse party may appear and move to
dissolve or modify the order. The court must then hear and decide the motion as promptly
as justice requires.

"A district court considering injunctive relief evaluates [a] the movant's likelihood of

success on the merits, [b] the threat of irreparable harm to the movant, [c] the balance of the

equities between the parties, and [d] whether an injunction is in the public interest." <u>Powell v. Ryan</u>, 855 F.3d 899, 902 (8th Cir. 2017) (citing <u>Dataphase Sys., Inc. v. C L Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981)). "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue. However, in deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." <u>Turtle Island Foods, SPC v. Thompson</u>, 992 F.3d 694, 699 (8th Cir. 2021) (cleaned up and citations omitted). Rule 65(a)(1) of the Federal Rules of Civil Procedure allows a court to "issue a preliminary injunction only on notice to the adverse party" unless an exception under Rule 65(b)(1) applies.

### III. Discussion

#### A. The movant's likelihood of success on the merits

"[G]overnment entities are strictly limited in their ability to regulate private speech in . . . 'traditional public fora.'" <u>Pleasant Grove City, Utah v. Summum</u>, 555 U.S. 460, 469 (2009) (cleaned up and citations omitted). "Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum." <u>Id.</u> at 470. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. Courts will apply a strict scrutiny analysis when the regulation discriminates on the basis of content, and a more lenient analysis to content-neutral regulations." <u>Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks</u>, 864 F.3d 905, 913–14 (8th Cir. 2017) (cleaned up and citations omitted).

"[I]n a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental

4

interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (cleaned up and citation omitted); see also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37, 45 (1983) ("The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication."). "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Ward, 491 U.S. at 800.

The Plaintiffs do not dispute that the restrictions at issue are content neutral. See doc. 4 at 14. However, they argue that the restrictions are not narrowly tailored to serve any significant governmental interest and do not leave ample alternative channels of communication. Doc. 4 at 16–18. The "narrow tailoring requirement means not only that the regulation must promote a substantial government interest that would be achieved less effectively absent the regulation, but also that the factual situation demonstrates a real need for the government to act to protect its interests." Johnson v. Minneapolis Park & Recreation Bd., 729 F.3d 1094, 1099 (8th Cir. 2013) (cleaned up and citations omitted). The protected interest cannot be abstract, and instead "there must be a genuine nexus between the regulation and the interest it seeks to serve." Id. The "[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." Ward, 491 U.S. at 799.

The State may have a significant interest in protecting its "Christmas at the Capitol" tradition. Long-held government traditions such as this serve the State's constituents and may foster civic engagement. However, a blanket restriction prohibiting any political gathering—apart

5

from gatherings of the Legislature itself—on State Capitol grounds for two months does not appear to be narrowly tailored to any such interests. The Capitol grounds consist of over 200 acres, and the "Christmas at the Capitol" display is contained within a relatively small area of these grounds. Doc. 1 at 5. Therefore, forbidding any demonstration on Capitol grounds is not narrowly tailored to protecting "Christmas at the Capitol" preparations. Further, the State does not appear to have provided "ample alternative channels of communication." Perry Educ. Ass'n, 460 U.S. at 45. Therefore, the Plaintiffs have initially demonstrated a likelihood of success on the merits of their claims.

### B.  The threat of irreparable harm to the movant

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). As the Supreme Court recognized many years ago, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (citation omitted). The harm of First Amendment violations is well-recognized, and the Plaintiffs have, initially, demonstrated a likelihood of success on the merits of their claim. Therefore, the Plaintiffs have alleged an immediate and irreparable harm in support of their motion for relief. See Powell v. Noble, 798 F.3d 690, 702 (8th Cir. 2015) ("If [the Plaintiffs] are correct and their First Amendment rights have been violated, this constitutes an irreparable harm." (citation omitted)).

### C.  The balance of equities between the parties

The Plaintiffs have alleged a serious harm. "It is well-established that "[t]he loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Id. If the Plaintiffs' demonstration is in an area apart from where decorating occurs, reasonable time, place, and manner of expression regulation should not then expose the State to harm.

### D. Whether an injunction is in the public interest

When a governmental agency is the defendant, "the final two factors [i.e. the balance of equities between the parties and whether an injunction is in the public interest] can 'merge' into one." Noem v. Haaland, No. 3:21-CV-03009-RAL, 2021 WL 2221728, at *16 (D.S.D. June 2, 2021) (cleaned up and citation omitted); see also Nken v. Holder, 556 U.S. 418, 435 (2009) (stating the same). Although the Plaintiffs' advocacy may be wrong-headed in supporting legislation of dubious constitutionality, neither this Court nor the State can discriminate based on the content of the Plaintiffs' proposed speech. The public interest generally is served by allowing the free exercise of First Amendment rights.

### IV. Conclusion and Order

The parties have stipulated to postpone the hearing that this Court had set, advising that the State has agreed to grant a permit allowing the Plaintiffs to demonstrate in designated areas on Capitol grounds. For good cause, it is

ORDERED that the November 5, 2021 hearing is cancelled and that the motion for a temporary restraining order and injunction, Doc. 3, is denied as moot without prejudice to refiling if the State somehow reneges on the issuance of a permit. The parties are encouraged to file a joint motion to dismiss after the Plaintiffs' demonstration at the Capitol takes place.

7

DATED this 5th day of November, 2021.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE