UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| BLUE STATE REFUGEES, LUKE ROBERTSON, CHAD DOLLICK, <br><br>Plaintiffs, <br><br>vs. <br><br>KRISTI NOEM, GOVERNOR OF SOUTH DAKOTA, IN HER OFFICIAL CAPACITY; SCOTT BOLLINGER, COMMISSIONER, BUREAU OF ADMINISTATION, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; BRENT GILL, MANAGER, BUILDINGS AND GROUNDS, BUREAU OF ADMNISTRATION, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND LEAH SVENDSEN, SPECIAL PROJECTS COORDINATOR, BUREAU OF ADMINISTRATION, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES; <br><br>Defendants. | 3:21-CV-03024-RAL <br><br>OPINION AND ORDER GRANTING MOTION FOR ATTORNEYS' FEES IN PART |

Defendants Kristi Noem, Scott Bollinger, Brent Gill, and Leah Svendsen ("Defendants") are executives and employees of the State of South Dakota. Blue State Refugees, a political organization; Luke Robertson; and Chad Dollick ("Plaintiffs") brought a complaint under 42 U.S.C. § 1983 alleging Defendants violated their First Amendment rights by refusing to grant them a permit to demonstrate on the state Capitol grounds. Defendants agreed to grant Plaintiffs a permit the next day and later agreed to pay Plaintiffs' reasonable attorneys' fees. The parties could not agree on what amount of attorneys' fees was reasonable, and Plaintiffs filed this motion for

attorneys' fees and costs seeking $25,179.79 for local counsel fees, $38,656.00 for out-of-state counsel fees, and $568.20 in costs. This Court determines the fees sought are excessive for the legal issues presented in this short-lived case and grants Plaintiffs an award of attorneys' fees below the $63,835.79 sought.

**I.     Facts and Procedural History**

On October 29, 2021, Plaintiff Robertson for himself and Blue State Refugees contacted Joan Henderson, Senior Secretary of the South Dakota Bureau of Administration, to inquire about obtaining a permit. Doc. 1 at 9–10; Doc. 31 at 2. Robertson sought the permit for himself and other members of Blue State Refugees to demonstrate on the South Dakota State Capitol grounds during a special session of the South Dakota Legislature on November 8, 2021, and November 9, 2021. Doc. 1 at 9–10; Doc. 31 at 2. The demonstration was intended to support the "COVID-19 Vaccine Freedom of Conscience Act," which would bar employers, educational institutions, and businesses from requiring vaccination from the Coronavirus ("COVID-19"). Doc. 1 at 8–9; Doc. 31 at 2. Henderson and later Defendant Svendsen informed Robertson and another member of Blue State Refugees through email and over the phone that the Capitol grounds were closed to demonstrations during November and December while the Capitol was being decorated for the "Christmas at the Capitol" display. Doc. 1 at 10–11.

On November 3, 2021, Plaintiffs filed a complaint alleging that Defendants violated their First Amendment rights. Doc. 1 at 12–20. Plaintiffs sought a temporary restraining order enjoining Defendants from denying their permit request or enjoining Defendants from stopping Plaintiffs from demonstrating. Doc. 1 at 21–22; Doc. 3. Plaintiffs also sought declaratory relief establishing that Defendants' permit policies violated the First Amendment. Doc. 1 at 21. The next day, this Court issued an order notifying Defendants of the motion for a temporary restraining

order and scheduling a motion hearing for November 5, 2021. Doc. 9. The parties negotiated throughout the day and evening that same day and reached an agreement that Defendants would give Plaintiffs a permit. Doc. 31 at 3; Doc. 33 at 2. The parties notified the Court in the early morning hours of November 5th of that agreement and that the emergency hearing may no longer be necessary. Doc. 14 at 7; Doc. 31 at 3. On November 5th, this Court issued an order cancelling the hearing, denying Plaintiffs' motion for a temporary restraining order and injunction as moot, doc. 3, and encouraging the parties to file a motion to dismiss after Plaintiffs' demonstration took place. Doc. 14 at 7.

Plaintiffs held their demonstration on November 8th and 9th as generally agreed to[1] but, on December 3, 2021, filed a Motion to Alter or Amend November 5, 2021 Order. Doc. 15. Plaintiffs stated that negotiations to settle the case were under way and a joint motion to dismiss was "easily within reach." Doc. 16 at 4. However, they argued that Defendants' unconstitutional permit policies remained in effect for the time being, so Plaintiffs' request for injunctive relief was ripe for review. Doc. 16 at 3–4. The Court issued an order, doc. 17, directing Defendants to respond to the Complaint, doc. 1, and Plaintiffs' Motion to Alter or Amend November 5, 2021 Order. Doc. 17.

On December 16, 2021, the parties filed a Stipulation for Consent Decree and Entry of Order, Doc. 18, in which Defendants agreed to amend their policies and guidelines for issuing permits on state Capitol grounds and conceded that Plaintiffs were the prevailing party. Doc. 18

---

[1] Defendants allege that although Plaintiffs received a permit to demonstrate on two designated areas of Capitol grounds, Plaintiffs demonstrated on a public sidewalk instead. Doc. 31 at 3–4; Doc. 32 at 2–3. Plaintiffs concede they demonstrated on the sidewalk after realizing they had favorable exposure to street traffic there. Doc. 38 at 3–4. But Plaintiff Luke Robertson stated that he and about a dozen others also demonstrated on the designated areas of the Capitol grounds, and demonstrators moved between the sidewalk and the designated areas of Capitol grounds during the demonstration. Doc. 38 at 3–4.

3

at 1–2. The parties also agreed to negotiate and settle attorneys' fees or submit the issue to the Court if no agreement could be reached. Doc. 18 at 2–3. This Court issued an order based on the Stipulation for Consent Decree and Entry of Order, doc. 19, and another order denying the Motion to Alter or Amend November 5, 2021 Order, doc. 15, as moot. Doc. 20.

Defendants revised their permit policies in compliance with the consent decree, but the parties were unable to settle Plaintiffs' attorneys' fees claim. Doc. 21; Doc. 31 at 4. Plaintiffs seek attorneys' fees totaling $63,835.79 plus $568.20 in costs. The attorneys' fees request consists of $25,179.79 in fees for local counsel including South Dakota state sales tax, and $38,656.00 in fees for out-of-state counsel Alan Gura ("Gura") at the Institute of Free Speech. Doc. 35 at 9; Doc. 39 at 2. Defendants do not object to Plaintiffs' request for costs but argue the fees requested are excessive. Doc. 31 at 4–14. This Court agrees.

**II.    Legal Standard**

This Court may award Plaintiffs reasonable attorneys' fees under 42 U.S.C. § 1988(b). See also Rogers Grp., Inc. v. City of Fayetteville, 683 F.3d 903, 908–09 (8th Cir. 2012). "[T]he plaintiff bears the burden of establishing an accurate and reliable factual basis for an award of attorneys' fees, . . . and [] the district court has wide discretion in making a fee award determination." Philipp v. ANR Freight Sys., Inc., 61 F.3d 669, 675 (8th Cir. 1995) (citations omitted); see also Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Hanig, 415 F.3d at 825 (citations omitted). "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of

4

prevailing market rates." Hanig, 415 F.3d at 825. "Hours that are excessive, redundant, or otherwise unnecessary must be excluded from the district court's determination of reasonable time expended on the case." Miller v. Dugan, 764 F.3d 826, 832 (8th Cir. 2014) (cleaned up and citation omitted).

### III. Discussion

#### A. Reasonable Hourly Rate

Plaintiffs staffed this case with five South Dakota attorneys who charge the following: Stacy Hegge, $250/hour; Marty Jackley $300/hour; Catherine Seeley, $225/hour; Talbot Wieczorek, $295/hour; and Richard Williams; $300/hour. Doc. 22 at 2; Doc. 24 at 1–2; Doc. 25 at 2; Doc. 26 at 2; Doc. 27 at 2. All local counsel are employed by Gunderson, Palmer, Nelson, & Ashmore, LLP ("GPNA"). Doc. 21. Defendants do not challenge the hourly rates of Hegge, Jackley, and Wieczorek, and this Court finds that the rates of Hegge, Jackley, and Weiczorek are reasonable considering their experience. Doc. 31 at 9. Stacy Hegge has over seven years of experience as a staff attorney for the State of South Dakota and approximately two years of experience at GPNA. Doc. 22 at 2. Marty Jackley served as Attorney General for South Dakota from 2009 to 2019 and has over a decade of experience in private practice. Doc. 24 at 2. He was awarded attorney's fees at an hourly rate of $300 an hour in SD Voice v. Noem, 1:19-CV-01003-CBK, 2020 WL 104385 (D.S.D. Jan. 9, 2020). Doc. 24 at 2. Talbot Wieczorek is a managing partner at GPNA and has over thirty years of experience. Doc. 25 at 2.

But Defendants argue that a reduced rate of $250/hour for Williams and $150/hour for Seeley would be commensurate to similarly skilled attorneys in the local market. Doc. 31 at 9. Richard Williams is an associate at GPNA, has over two decades of practice experience, and has litigated First Amendment cases. Doc. 26 at 2. Catherine Seeley is associate at GPNA with two

years of private practice experience and is a former federal term law clerk. Doc. 27 at 2. This Court finds Williams' rate of $300/hour is commensurate to other highly experienced attorneys at the high end of the local market and declines to reduce his rate. See Hoffman v. MJC Am., Ltd, No. 4:18-CV-04169-LLP, 2019 WL 6134886, at *3 (D.S.D. Nov. 19, 2019) (awarding fees up to $350 for an experienced South Dakota lawyer). It finds a reduced rate of $200 for Seeley is commensurate to similarly skilled attorneys in the local market and reduces her rate accordingly.

Plaintiffs' out-of-state counsel, Alan Gura at the Institute of Free Speech, requests attorney's fees at a billable rate of $640/hour. Doc. 21 at 1. Gura is the Vice President of Litigation at the Institute for Free Speech. Doc. 23 at 2. He has over two decades of experience in private practice, with a focus on constitutional and civil rights, and has twice argued before the Supreme Court of the United States. Doc. 23 at 2. In 2013, Gura was named one of the "100 Most Influential Lawyers in America" by the National Law Journal, and he states that his billable rate of $640 per hour is well below the market rate for lawyers of similar experience. Doc. 23 at 2, 4. Plaintiffs argue that Gura's experience in First Amendment issues and the time sensitive issues in this case warrant that Gura receive attorney's fees at his billable rate. Doc. 35 at 5.

Defendants argue that Plaintiffs have not shown this case required assistance from out-of-state counsel, so Gura's fees should be limited to the local market rate. Doc. 31 at 9. In support, Defendants submitted an affidavit from Mark Miller, a South Dakota attorney with over 25 years of experience in constitutional issues, stating that he was never contacted to assist with the case. Doc. 34. Defendants argue that Gura should receive a fee award at a reduced rate of $300/hour. Doc. 31 at 9.

The Eighth Circuit has held that in cases "where the plaintiff does not use local counsel, the court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent,

6

good faith efforts, he was unable to find local counsel able and willing to take the case." Emery, 272 F.3d at 1048. Here, Plaintiffs have made no showing that local counsel was unwilling and unable to litigate this case. The case involved a straightforward application of long-standing First Amendment precedent, see Doc. 14 at 4–6 (analyzing Plaintiffs' likelihood of success of the merits of their claim), and Plaintiffs staffed the case with five local, capable attorneys. Therefore, Gura may be awarded attorney's fees at a reduced rate of $300/hour, which is commensurate to the local market rate for an attorney of similar experience. See Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 141 (8th Cir. 1982).

### B. Reasonable Hours Expended

The parties agree to exclude hours billed for press communications but disagree on whether to exclude 1.4 hours billed by Hegge on November 3, 2021, for time spent reviewing a draft of a press release, the Complaint, the motion for a temporary restraining order, and a declaration. Doc. 31 at 6–7; Doc. 35 at 4. Plaintiffs suggest that the Court deduct .3 hours rather than 1.4 hours billed because three other documents were also reviewed under this billing entry. Doc. 35 at 4. This Court agrees and excludes .3 hours from the entry on November 3rd rather than 1.4 hours. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (stating "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly"); see also Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (discussing a court's options for determining attorney's fees when billing records lack sufficient detail).

Additionally, Defendants request the following reductions in hours billed: (1) 5.5 hours billed before Plaintiffs requested a permit on October 29, 2021, (2) 14.2 hours billed for preparing the Motion to Alter or Amend November 5, 2021 Order and a summary judgment motion, and (3) .5 hours billed for reviewing changes to Defendants' permit policies. Doc. 31 at 5–7.

First, Defendants argue that the 5.5 hours billed before October 29th could not have been "reasonably expended" on the issues in this case because Plaintiffs had not even requested a permit at that point. Doc. 31 at 5. Plaintiffs dispute this. Doc. 35 at 1–2. Before Plaintiffs requested and were denied a permit on October 29th, they claim they received notice that Defendants had already denied another organization, Health Freedom SD, a permit on similar grounds. Doc. 35 at 1–2; Doc. 38 at 1–2; Doc. 40 at 2–5. Because Plaintiffs anticipated that they too would be denied a permit, Plaintiffs claim these 5.5 hours were necessary to and reasonably expended on researching their complaint. Doc. 35 at 1–2; Doc. 38 at 1–2.

Upon reviewing the pleadings and billing statements, this Court accepts Plaintiffs' explanation and determines the 5.5 hours billed before October 29th are recoverable. The record shows that Plaintiffs' counsel was researching Defendants' permit system and communicating with Plaintiffs Robertson and Dollock before October 29th. Doc. 23-3 at 1; Doc. 40 at 2–5. Because this time was expended on tasks necessarily leading up to preparing the complaint, it may be awarded. See Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 325 (8th Cir. 1993) (stating "any [] form of legal research[] is a component of attorneys' fees" (citation omitted)).

Next, Defendants argue that time expended on the Motion to Alter or Amend November 5, 2021 Order, docs. 15, 16; and researching a potential summary judgment should be excluded. Doc. 31 at 5. They claim that such motions were unnecessary because Plaintiffs already received a permit. Doc. 31 at 5–6. Plaintiffs respond that receiving a permit did not resolve the injury alleged by Defendants' "seasonal speech ban," so it was necessary to research and prepare additional motions. Doc. 35 at 3–4.

Here, Defendants agreed to grant Plaintiffs a permit within 36 hours of receiving notice of the complaint. Doc. 31 at 3; Doc. 33 at 2. Additionally, in the Motion to Alter or Amend

November 5, 2021 Order, Plaintiffs acknowledged "that a joint motion to dismiss should [have been] easily within reach" and "negotiations [were] still underway" at the time the motion was filed. Doc. 16 at 4. Nonetheless, Plaintiffs argue that the Motion to Alter or Amend November 5, 2021 Order was necessary if the negotiations fell through, and Defendants did not amend their permit policies to comply with the First Amendment. Doc. 15 at 4. By Plaintiffs' own account, the parties were near a resolution when Plaintiffs prepared and filed the Motion to Alter or Amend November 5, 2021 Order and researched a summary judgment motion. Therefore, this Court finds the time expended researching and preparing these motions was unnecessary and excludes it.[2] See Dugan, 764 F.3d at 832 (affirming a district court's exclusion of time expended preparing motions to compel attendance at depositions as "ill-advised and unnecessary" because the parties had not yet set a time for the depositions to take place).

Finally, Defendants object to .5 hours billed "to review and suggest edits" to Defendants' new permit policies prepared in compliance with the consent decree. Doc. 31 at 6. This Court overrules that objection. The time spent was reasonably brief, and it was related to obtaining relief for Plaintiffs by ensuring the policies complied with the consent decree. The Eighth Circuit has held that "in the context of fee requests under [42 U.S.C.] § 1988, postjudgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee." McDonald v. Armontrout, 860 F.2d 1456, 1461 (8th Cir. 1988) (cleaned up and citations omitted).

---

[2] This Court declines to deduct .2 hours from Defendants' requested deduction for unnecessary motions because these .2 hours appear to be related to the Stipulation for Consent Decree and Entry of Order. See Doc. 23-3 at 3 (entries for 12/16/21 and 12/17/21); Doc. 31 at 6. Therefore, for hours expended on unnecessary motions, this Court deducts 5.2 hours from Gura's fee award instead of 5.4 hours.

9

Applying the deductions this Court has adopted, attorneys' fees are as follows:

**Gunderson, Palmer, Nelson, & Ashmore, LLP (GPNA)**

| | | | |
|---|---|---|---|
| Stacy Hegge | $33^3$ hours at \$250/hr | = | \$8,250.00 |
| Marty Jackley | $19.2^4$ hours at \$300/hr | = | \$5,760.00 |
| Catherine Seeley | $14^5$ hours at \$200/hr | = | \$2,800.00 |
| Talbot Wieczorek | $1.4^6$ hours at \$295/hr | = | \$413.00 |
| Richard Williams | $12.4^7$ hours at \$300/hr | = | \$3,720.00 |
| Total | 80 hours | = | **\$20,943.00** |

**Institute of Free Speech**

| | | | |
|---|---|---|---|
| Alan Gura | $55.2^8$ hours at \$300/hr | = | **\$16,560.00** |

After these deductions, Plaintiffs' attorneys' fees total \$37,503.00. Defendants argue such a sum is still too high and request a downward adjustment. Doc. 31 at 10–11. They argue that the case was overstaffed for the issues presented leading to unnecessary duplication of legal work. Doc. 31 at 10–14. If appropriate, a "court may reduce attorney hours, and consequently fees, for

---

[3] 28.7 + 8.6 – 3.7 (hours on unnecessary motions)–.6 (hours on press matters) = 33. Doc. 22-1 at 6–9; Doc. 31 at 5–7; Doc. 39-1.
[4] 19.8 – .6 (hours on press matters) = 19.2. Doc. 22-1 at 2, 5; Doc. 31 at 6–7.
[5] 15.7 – 1.4 (hours on unnecessary motions) –.3 (hours on press matters) = 14. Doc. 22-1 at 5–9; Doc. 31 at 5–7.
[6] No deductions.
[7] 16.1 – 3.7 (hours on unnecessary motions) = 12.4. Doc. 22-1 at 6–9; Doc. 31 at 5–7.
[8] 57.4 + 3 – 5.2 (hours on unnecessary motions) = 55.2. Doc. 23-3; Doc. 31 at 5–6; Doc. 40-1.

inefficiency or duplication of services in cases where more than one attorney is used." A.J. by L.B. v. Kierst, 56 F.3d 849, 864 (8th Cir. 1995).

This Court agrees that an additional downward adjustment is appropriate. This case involved straightforward issues concerning the application of long-standing First Amendment precedent. See Doc. 14 at 4–6. Defendants agreed to grant Plaintiffs a permit within 36 hours of receiving notice of their complaint. Doc. 31 at 3; Doc. 33 at 2. And once Plaintiffs received the permit, any remaining issue concerning Defendants' permit policies were resolved through negotiations and a consent decree. Docs. 18, 19.

Although the issues in this case were clear and unextraordinary, five local attorneys, three of whom were highly experienced, worked on the case. And Plaintiffs recruited highly experienced out-of-state counsel to help direct the litigation and draft the pleadings. Thickly staffing the case with six different attorneys contributed to an attorney fee claim out of proportion to the short duration and simple legal issue presented. The billing statements reflect duplication in review of the pleadings, and billing for frequent correspondence among in-state counsel and between in-state and out-of-state counsel. See Doc. 22-1; Doc. 23-3. In the Court's experience, a simple case such as this one could have been managed effectively by fewer attorneys. This Court spent considerable time scrutinizing the billing statements and concludes that an additional 30% reduction in the attorneys' fees award to GPNA is appropriate. After applying this deduction, Plaintiffs are entitled to $14,660.10 in fees for GPNA and $16,560.00 in fees for the Institute of Free Speech.

**IV.   Conclusion and Order**

For the reasons discussed, it is hereby

ORDERED that Plaintiffs' Motion for Attorney Fees and Costs, Doc. 21, is granted in part and denied in part. The amount of recoverable attorneys' fees is $16,560.00 for the Institute of Free Speech, $14,660.10 for GPNA, and $952.91 to GPNA for sales tax on the fee award. It is further

ORDERED that Defendants pay Gunderson, Palmer, Nelson, & Ashmore LLP costs in the amount of $568.20. It is further

ORDERED that Defendants pay Gunderson, Palmer, Nelson, & Ashmore LLP attorneys' fees in the amount of $14,660.10, plus state sales tax on those attorneys' fees in the amount of $952.91. It is finally

ORDERED that Defendants pay the Institute of Free Speech attorney's fees in the amount of $16,560.00.

DATED this 4th day of April, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE